(118 App. Div. 398)

## MUNSON v. JAMES SMITH WOOLEN MACHINERY CO.

(Supreme Court, Appellate Division. Third Department. March 13, 1907.)

1. INTEREST—DEMANDS NOT LIQUIDATED—BREACH OF CONTRACT.

In an action for damages for breach of contract involving unliquidated damages, it is error to allow interest upon the amount of damages found.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Interest, § 35.]

2. DAMAGES—BREACH OF CONTRACT.

Where defendant was sued for breach of his contract to perform certain work, it was improper to allow plaintiff for labor furnished by him to aid the defendant, where plaintiff was not required or requested to furnish the labor.

3. APPEAL—REVIEW—TRIVIAL ERROR—AMOUNT OF DAMAGES.

Where plaintiff was entitled to have the jury find as an element of his damage for breach of contract the rental value of his mill from November 12th until May 8th, it was not reversible error to allow them to find the rental value from February 1st to August 1st as an element of his damage; the two periods being substantially the same length.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4033.]

4. CONTRACTS—BREACH—DELAY IN PERFORMANCE.

Where a party has failed to perform a contract to furnish machinery that would perform certain work, it is immaterial whether the delay has been caused by the attempted furnishing of the machinery first provided for or of parts contemplated by subsequent modifications of the original agreement.

5. DAMAGES—MEASURE—BREACH OF CONTRACT—MODE OF ESTIMATING DAMAGES.

Where damages are claimed for a breach of contract to furnish machinery for a mill, it was error to charge the defendant with the rental value of the whole mill as part of the damages for the breach, where it was not shown that in the performance of the contract the whole mill was so occupied that no separate business could be run therein.

6. EVIDENCE—OPINIONS—KNOWLEDGE OF WITNESS.

Where plaintiff claimed as one of the elements of damage for a breach of contract the rental value of his mill, testimony by a witness, who had not been in the mill for 15 years, knew of its machinery only from plaintiff's statements, and placed the rental value upon the cost of maintenance and a fair interest on the money invested, was incompetent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2196, 2217.]

Appeal from Trial Term, Saratoga County.

Action by Edward G. Munson against the James Smith Woolen Machinery Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Prior to November 12, 1902, the plaintiff was the proprietor of certain mills in the town of Waterford, Saratoga county, known as the "Massasoit Knitting Mills." This mill was equipped as a seven set knitting mill, and was operated by plaintiff from 1872 to November 12, 1902. Prior to November 12th the plaintiff had decided to change his mill to a plant for the manufacture of glazed cotton wadding. With this in view, he applied to defendant for machinery which would be sufficient for the manufacture of glazed cotton wadding. The agent of the defendant visited the mill and thereafter the defendant made a contract, as has been found, to furnish for $4,500 certain machinery which should be capable of the proper manufacture of glazed cotton wadding. This machinery was to be furnished in running order by the 1st day of February, 1903. It was provided, however, that the defendant should

not be liable for delays caused by strikes. The machinery was not, in fact, furnished until the 5th day of April, 1903. From that date until the 8th day of May the defendant was at work endeavoring to fix its machinery so as to make it capable of the manufacture of glazed cotton wadding. This it failed to do within that time, and upon the 8th day of May the plaintiff notified the defendant that he considered the contract broken and held the machinery subject to its order. Thereafter the plaintiff himself constructed some machinery for the manufacture of glazed cotton wadding, which machinery was finished about the 1st of August of that year. Thereafter the plaintiff sued the defendant for damages for failure to furnish this machinery capable of the manufacture of this wadding. The jury gave him a verdict for the sum of $1,730.79. From the judgment entered upon this verdict, and from an order denying the defendant's motion for a new trial, the defendant here appeals.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Montignani & Elmendorf (John L. Henning, of counsel), for appellant.

John E. MacLean, for respondent.

SMITH, P. J. Assuming plaintiff's right to recover for breach of contract, the items allowed for the board of defendant's men, for express and freight charges, and cartage paid, amounting to $277.15, are not questioned. As this was not a liquidated claim, nor capable of accurate ascertainment, we are unable to find any authority for the allowance by the jury of interest upon the amount of damages which they should find. It appears also that while the defendant was attempting to perform its contract some labor was furnished by the plaintiff. It does not appear that plaintiff was required to furnish this labor, nor that there was any agreement on the part of defendant to pay for the same, nor that it was performed on defendant's request. The allowance of the item of $341.06, therefore, for the labor of plaintiff's men, would seem to have been unauthorized.

The learned trial judge allowed the jury to find as an item of plaintiff's damages the rental value of the mill from February 1st, the date upon which it was to be finished, until May 8th, the date upon which the defendant was notified that the plaintiff deemed the contract unperformed, and further to August 1st, the date upon which new machinery was installed in the mill by the plaintiff himself. It is not easy in this class of cases to state a rule of damage which shall give fair compensation for injury sustained by a breach of such a contract as is here involved. From the failure to perform the contract the plaintiff has lost the use of at least part of his mill from November 12th, when he handed the mill over to defendant for the installation of the machinery contracted for, until May 8th when the jury has found that the plaintiff rightfully declared the contract forfeited. This period would seem to me to be the period for which the plaintiff might claim damage in the loss of rental value. Inasmuch, however, as the period is of substantially the same length as the period from February 1st to August 1st, for which damages were in fact allowed, the difference is not substantial, and for that alone the judgment should not be reversed. During this period, from November 12th to May 8th, the work was in part delayed by strikes, for which delay the defendant under the

contract was not to be held liable. But this contract contemplated the final furnishment of sufficient adaptable machinery, and, having failed to perform its part of the contract, defendant cannot claim the benefit of that part which exempted it from liability by reason of strikes. Further, it may be that some of this delay was caused by changes in the plan of the machinery to be furnished, made by the plaintiff himself, which would require longer time than was contemplated by the contract. To these changes, however, the defendant assented, and, having failed to perform the contract to furnish machinery that would make this glazed cotton wadding, it is immaterial whether the delay has been caused by the attempted furnishment of the machinery first provided for or of parts contemplated by subsequent modifications of that original agreement.

A question is further raised as to the right of the plaintiff to recover as damage the rental value of the entire mill, when the part to be reconstructed for glazed cotton wadding contemplated only the reconstruction of a part of the machinery in the mill which occupied a part only of the mill proper. There seems to be some evidence that the construction of this machinery, however, appropriated all of the power of the mill, so that during the course of construction it was impossible to use the balance of the mill for any purpose. If, in the performance of the contract, the whole mill was entirely occupied, or so far occupied that no separate business could be run therein, it would then seem that a part of the injury was the loss of the rental value of the whole mill. If, however, part of the machinery was not to be reconstructed, and part of the mill could have been continued in use as a knitting mill, or for other purposes, it would seem to have been improper to have allowed the jury to charge against this defendant the rental value of the whole mill as part of the damage for the breach of this contract.

The principal obstacle, however, to the affirmance of this judgment, lies in the plaintiff's proof of the rental value of this mill. This proof was attempted to be made by the witness North, who had lived in Cohoes since 1851, and had owned a mill for the manufacture of knit goods in that place. He swears that 15 years before he had been through the mill and had seen the machinery; that he only knew the horse power by what he had been informed, and he did not testify to what he had been informed thereupon. He knew what machinery was there only from what the plaintiff himself had testified. He was not acquainted with the manufacture of glazed cotton wadding, and did not know that there was a mill in the state of New York engaged in that business. Without knowledge of the rental of any mills for the manufacture of glazed cotton wadding, he swears that a mill would be equally valuable for the manufacture of any textile goods, and that the value of the rental of this mill for the purpose of manufacturing glazed cotton wadding would be $20 a day. He swears that he places the rental value not upon the income, but upon the cost of maintenance and a fair interest over on the money invested. He further swears:

"It might produce an income, and it might not. My idea of the rental value of that property, therefore, depends upon the cost of maintenance and a fair return on the investment, and not on whether it is worth more or less to manufacture glazed cotton wadding."

The evidence of this witness as to the rental value of this mill was duly objected to, and after it was admitted, and it further appeared as to the basis upon which he put the rental value, motion was duly made by counsel for the defendant to strike out the evidence as incompetent and that the witness was not qualified to answer. In my judgment the evidence should not have been admitted, or, if admitted, should have been thereafter stricken out on motion. It was not necessary to prove the rental value of that mill as a mill for the manufacture of glazed cotton wadding. At the time it was handed over to defendant it was fully equipped for the manufacture of knit goods. If the mill from November 12, 1902, to May 8, 1903, had not been wrongfully occupied by the defendant, it could have been used through that period for the manufacture of knit goods, and evidence of its rental value for the manufacture of knit goods would have been more definite and a fairer estimate of the injury done to the plaintiff than any speculation as to what might have been its rental value for the manufacture of glazed cotton wadding. It appears, however, that the witness was basing his evidence of rental value upon the profit to be made. He swears unqualifiedly that he bases it upon the cost of maintenance and a fair return for the money invested. The reason stated by the authorities why the rental value should be taken as the measure of damage expressly excludes this item of proof or a fair return for the money invested as an element of damage because of its uncertainty; so that, while the witness has designated his estimate as rental value, he shows by his testimony that he is giving evidence of fair profit which might have been made, which the law characterizes as too uncertain as a rule of damage. Moreover, it is impossible to conceive how one can estimate the rental value of a mill without knowledge of its water power, nor would it be competent for a witness to base an estimate upon hearsay knowledge of water power, especially when he fails to disclose what the information is upon which he is acting. The learned judge at one time ruled that it was improper for the witness to base his answer upon what had been sworn to by another witness as to what machinery was in the mill, but he allowed the question to be answered without any further evidence as to the witness' knowledge of what machinery was there, and the witness had not been in the mill in 15 years. The defendant may rightfully complain, I think, of a verdict which is allowed to be based upon such evidence. .

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.